# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| TUWANNA R. HALLFORD | * | CIVIL ACTION NO.  13-3171 |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

On April 24, 2012, Tuwanna Hallford filed the instant applications for Title II disabled widow's benefits and Title XVI Supplemental Security Income payments.  (Tr. 113-118).  She alleged disability as of March 1, 2012, because of angina and emphysema.  (Tr. 141, 155, 158). The state agency denied the claims at the initial stage of the administrative process.  (Tr. 51-70). Thereafter, Hallford requested and received an August 28, 2012, hearing before an Administrative Law Judge ("ALJ").  (Tr. 21-50).  In a September 12, 2012, written decision, however, the ALJ determined that Hallford was not disabled under the Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a certified nursing assistant ("CNA").  (Tr. 7-17).  Hallford appealed the adverse decision to the

Appeals Council.  On September 30, 2013, however, the Appeals Council denied Hallford's request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On December 3, 2013, Hallford sought review before this court.  She alleges the following errors,

(1)     the ALJ's step four determination is not supported by substantial evidence because plaintiff's past relevant work as a CNA requires frequent hand use; and

(2)     the ALJ's residual functional capacity assessment is not supported by substantial evidence because she failed to include the mild mental limitations of functioning that she recognized in her application of the psychiatric review technique.

**<u>Standard of Review</u>**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

2

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

3

> (5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See Boyd v. Apfel, 239 F.3d 698, 704 -705 (5ᵗʰ Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period.  (Tr. 12).  At step two, she found that Hallford suffers severe impairments of chronic obstructive pulmonary disease ("COPD"); history of costochondritis; and Kienbock's disease.  (Tr. 13).  *Id.*[1]  She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 14).

### II.     Residual Functional Capacity

---

[1]  The ALJ determined that Hallford's medically determinable impairment of depression did not cause more than minimal limitation in her ability to perform basic mental work activities, and thus, was a non-severe impairment.  (Tr. 13-14).

4

The ALJ next determined that Hallford retained the residual functional capacity ("RFC") to perform work at all exertional levels, except that she:  1) should avoid concentrated exposure to cold or heat extremes, 2) experience only occasional exposure to irritants such as fumes, gases, wetness, and humidity, and 3) is unable to perform jobs requiring fine manipulation.  (Tr. 15-16).  **III.      Step Four**

At step four, the ALJ employed a vocational expert to find that Hallford was able to return to her past relevant work as a CNA, Dictionary of Occupational Titles ("DOT") Code 355.674-014, both as that job is actually and generally performed.  (Tr. 16-17).[2]

<u>Analysis</u>

**I.      Chronology of Relevant Medical Evidence**

The medical record in this case – particularly for the period at issue – is relatively sparse. In 2001-2002, Hallford suffered various workplace injuries.  On January 27, 2004, Rafael Williams, M.D., administered an independent medical examination, and opined that Hallford should not lift anything greater than five pounds on either hand, with light duty only.   (Tr. 462-465).  Similarly, in an April 1, 2004, deposition, plaintiff's treating physician, Alfred Cardet, M.D., testified concerning the effects of the injuries suffered by Hallford.  (Tr. 440-460).  He opined that Hallford should be limited to "no lifting and no repetitive use of the upper extremities."  (Tr. 452).

On December 14, 2007, a drug screen was positive for amphetamines and opiates.  (Tr. 379, 388).  A December 15, 2007, pulmonary function test showed no significant obstructive or

---

[2]   Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'"  *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

restrictive defects.  (Tr. 399, 359).  On December 24, 2007, Hallford was hospitalized with complaints of chest pain.  (Tr. 361-362).

On September 15, 2009, Hallford went to the emergency room, where she was diagnosed with viral bronchitis and advised to cease smoking.  (Tr. 343).

On March 10, 2010, Hallford presented to Twin Cities Hospital with complaints of shortness of breath.  (Tr. 205-207).  She was diagnosed with COPD, acute exacerbation, and emphysema.  (Tr. 206).  Her chest x-ray showed no pneumonia, however.  *Id*.  She received medication and was instructed to stop smoking.  *Id*.

On August 30, 2011, Hallford went to the emergency room with complaints of shortness of breath that she experienced with light activity.  (Tr. 241-246).  *Id*.  At their worst, however, her symptoms remained mild.  *Id*.

On December 20, 2011, Hallford returned to the emergency room with complaints of chest congestion.  (Tr. 228-234).  She reported an acute, intermittent cough.  *Id*.  At their worst, her symptoms were moderate.  *Id*.  She stated that she had no insurance, and no transportation to LSU.  *Id*.

Hallford was hospitalized from April 27-29, 2012.  (Tr. 212-214).  She was discharged with diagnoses of costochondritis, anxiety, COPD, and tobacco abuse.  *Id*.  It was noted that she was a long-time chronic smoker - two to three packs per day, but only one pack per day for the last two months.  *Id*.  She was advised to use her cigarette money to pay for basic medical services.  *Id*.  She received a prescription for Xanax and Naprosyn.

II.     **Discussion**

6

a)      Step Four

Plaintiff contends that the ALJ erred in her step four determination because she relied on

vocational expert ("VE") testimony that conflicts with the Dictionary of Occupational Titles

("DOT"), without obtaining an explanation from the VE for the inconsistency.  According to

Social Security Ruling 00-4p:

> [w]hen a VE or VS [vocational specialist] provides evidence about the
> requirements of a job or occupation, the adjudicator has an affirmative
> responsibility to ask about any possible conflict between that VE or VS evidence
> and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with
> information provided in the DOT; and If the VE's or VS's evidence appears to
> conflict with the DOT, the adjudicator will obtain a reasonable explanation for the
> apparent conflict.
>
> *          *          *
>
> When vocational evidence provided by a VE or VS is not consistent with
> information in the DOT, the adjudicator must resolve this conflict before relying
> on the VE or VS evidence to support a determination or decision that the
> individual is or is not disabled.  The adjudicator will explain in the determination
> or decision how he or she resolved the conflict.  The adjudicator must explain the
> resolution of the conflict irrespective of how the conflict was identified.

TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND
OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS (SSR 00-4p) (Dec. 4,
2000).

At the hearing in this matter, the ALJ instructed the VE that if any of his opinions

conflicted with information in the DOT, then he needed to advise her of the conflict and explain

the basis for his opinion.  (Tr. 47).  Thereafter, the ALJ posited a hypothetical to the VE that

included a complete restriction on fine manipulation, which she defined as the inability to pick

up paperclips and other small office objects.  (Tr. 48-49).  The ability to pick or pinch is also

known as "fingering."  TITLES II AND XVI: CAPABILITY TO DO OTHER WORK -- THE MEDICAL-

VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL

IMPAIRMENTS (SSR No. 85-15).

7

The VE responded that such a hypothetical claimant could perform the job of CNA, DOT # 355.674-014.  *Id*.  According to the DOT, however, the job of CNA requires frequent handling, reaching, feeling, and **fingering**.  *See* DOT # 355.674-014, 1991 WL 672944.  Nevertheless, the VE failed to identify or explain this inconsistency between his testimony and the DOT, despite explicit instructions from the ALJ to do so.  Consequently, the ALJ was unable to address and resolve the inconsistency in her decision.[3]

Where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required (*e.g.* by case law).  *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted).  If an agency violates its own rules, with resulting prejudice, then the underlying  proceedings are tainted,  and any resulting actions cannot stand.  *Id*.  Nonetheless, "[p]rocedural perfection in administrative proceedings is not required."  *Mays v. Bowen*,  837 F.2d 1362, 1364 (5th Cir.1988).  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

In this case, the court cannot conclude that the VE's omission and the ALJ's resulting

---

[3]  Citing *Carey v. Apfel*, the Commissioner stresses that Hallford "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."  *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).  In *Carey*, the claimant, who was status post-amputation of an upper limb, argued that the VE's testimony that he could work as a cashier or ticket seller was insupportable because it conflicted with the frequent hand manipulation requirements that the DOT specified for those jobs.  *Id*.  The Fifth Circuit stressed, however, that the DOT does not specify that *bilateral* hand manipulation is required to perform those jobs.  *Id*.  Accordingly, in *Carey*, there was only an *implied* conflict between the VE's testimony and the DOT.  *Id*.  Here, in contrast, the ALJ restricted Hallford from *all* fine manipulation/fingering, which is an explicit contradiction of the DOT's requirements for the CNA position that remains unaddressed and unresolved.

failure to address the inconsistent testimony was harmless.  The record does not contain any rationale to support the VE's testimony.  In addition, although the ALJ further concluded that plaintiff could return to her past relevant work as she *actually* performed it, there is no evidence to support that finding.  Rather, Hallford indicated that her prior CNA job required her to write, type, or handle small objects for two hours per day – a requirement that plainly exceeds the ALJ's complete ban on jobs that require fine manipulation/fingering.  (Tr. 170).

       In sum, the court is compelled to find that the ALJ's step four determination is not supported by substantial evidence.  *See Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) (remand required, *inter alia*, because of ALJ's failure to explain how claimant's impairments did not prevent the claimant from returning to past relevant work).

       b)    <u>Residual Functional Capacity</u>

       Plaintiff contends that the ALJ erred in her RFC analysis because she failed to consider the effects of plaintiff's mental impairment that the she found caused no more than mild limitations of functioning at steps two and three of her decision.  Be that as it may, an even more glaring omission, that was no more than tangentially raised by plaintiff, is the complete absence of evidence to support the ALJ's assessment of plaintiff's physical impairments.  Plaintiff's own testimony certainly does not support the ability to work at all exertional levels.  *See e.g.*, Tr. 32-35.  Moreover, no medical source has opined that she can perform work at all exertional levels.  In fact, the most recent medical opinions to address plaintiff's ability to work (albeit, from 2004), restricted her to lifting, at most, no more than five pounds, light duty, and/or no repetitive lifting.  (Tr. 440-465).  Moreover, the ALJ determined that the impairment that caused these limitations, at least as to one her wrists, persisted through the period at issue.  There is no evidence that her condition has improved.

Thus, it is manifest that the ALJ autonomously divined plaintiff's RFC simply on the basis of her own assessment of the effects of Hallford's physical impairments.  While an ALJ need not always ground her RFC on a physician's medical source statement, her RFC still must be supported by substantial record evidence.  In *Ripley v. Chater*, the Commissioner argued that the medical evidence substantially supported the ALJ's decision.  *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995).  Specifically, the Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles.  *Id*.  However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*, and thus, the court is constrained to find that the ALJ's RFC is not supported by substantial evidence.  *See Ripley, supra; Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence). This error provides an independent basis for reversal and remand.

## Conclusion

For the above-stated reasons,

10

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 12th day of January 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE